E-FILED
Monday, 29 August, 2005  02:47:49 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AMEREX CORPORATION, d/b/a GETZ MANUFACTURING ) ) ) Plaintiff, ) ) v. ) ) INDUSTRIAL TOOL & REPAIR, INC., ) ) ) Defendant. ) | Case No.  05-1125 |

## **O R D E R**

This case is before the court on Defendant's Motion to Dismiss Counts II, III, V, and VI of Plaintiff's Complaint.  For the following reasons, that Motion [#5] is GRANTED in part and DENIED in part.

### Background

According to the Complaint, Getz was negotiating with the United States Army Tank Automotive Command ("TACOM") to supply certain replacement parts — specifically, a 1301 cylinder filling system — for the Army's Abrams tanks.  However, Getz proposed to build a type of filling system as a replacement for the 1301 cylinder filling system that was used in conjunction with a cylinder inverter.  The type of cylinder inverter proposed by Getz had never been produced by any manufacturer before.  TACOM agreed to continue negotiations after the a prototype of the new cylinder was operational.  Following that, Getz began to construct a prototype of the new type of cylinder inverter.

In the course of making the prototype, Getz sent drawings of the new cylinder inverter to Industrial Tool so that Industrial Tool could manufacture specific component

parts. Between October and December 1999, Getz made three orders for parts from Industrial Tool. In each case, the drawings sent to Industrial Tool were clearly marked and identified as proprietary.

From the parts obtained from Industrial Tool and others, Getz successfully assembled a prototype of the new cylinder inverter. TACOM ordered one prototype, and based on the likelihood of future orders, began to plan accordingly. In anticipation of future orders and pursuant to a written agreement (the "tooling agreement"), Getz contracted with Industrial Tool to create certain dies, molds, and fixtures (the "tooling") for Getz according to specifications and drawings that Getz had provided (the "intellectual property").

Between April and November 2000, Getz engaged Industrial Tool to make 76 new cylinder inverters. Because they believed that there would be future orders, Getz consented to Industrial Tool's continued possession of the tooling after the completion of the April 2000 contract. However, between November 2001 and February 2002, Getz requested that Industrial Tool return the tooling to Getz. Industrial Tool has refused to do so. In the beginning of January 2004, TACOM approached Getz to determine if Getz would be interested in selling additional cylinder inverter systems to TACOM. Getz in turn contacted Industrial Tool to see whether Industrial Tool was interested in again working with Getz. Industrial Tool declined to do further business with Getz, but instead submitted its own bid to TACOM to supply the Getz-designed cylinder inverters. In submitting its bid, Industrial Tool used Getz's tooling and intellectual property. In March 2005, TACOM accepted Industrial Tool's bid on the new contact.

Getz then filed a six-count Complaint against Industrial Tool alleging that Industrial

Tool wrongfully detained and exploited Getz's tooling and intellectual property. Getz alleges: Breach of Contract (Count I); Conversion (Count II); Replevin (Count III); Trade Secret Misappropriation (Count IV); Tortious Interference with Economic Advantage (Count V); and Injunctive Relief (Count VI).

Defendant filed a motion to Dismiss Counts II, III, V, and VI, claiming that those Counts are preempted by the Illinois Trade Secrets Act, 765 ILCS § 1065/8 ("ITSA"). In response, Plaintiff voluntarily withdrew Counts V and VI. Thus, the only question before the court at this time is whether the ITSA preempts Counts II and III.

## Discussion

Section 8 of the ITSA provides as follows:

> (a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This Act does not affect:
>
> > (1) contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;
> >
> > (2) other civil remedies that are not based upon misappropriation of a trade secret;
> >
> > (3) criminal remedies, whether or not based upon misappropriation of a trade secret; or
> >
> > (4) the definition of a trade secret contained in any other Act of this State.

765 ILCS § 1065/8.

Thus, by its plain terms, the ITSA preempts a common law theft claim if that claim is based on the appropriation of a trade secret. Accordingly, this court must examine Counts II and III, which are based on conversion and replevin, to determine whether they are based on the appropriation of a trade secret. If so, the Counts must be dismissed; if not they must remain.

In Counts II and III Getz seeks damages not for the return not of the information it imparted to Industrial Tool, but rather because of Industrial Tool's continued and allegedly unlawful possession of the tooling — that is, dies, molds and fixtures — that Industrial Tool made for Getz. In Count II, for example, Getz alleges that it has an "absolute and unconditional right to immediate possession *of the tooling*"; and that "Industrial Tool's refusal to return *the tooling* to Getz was and continues to be intentional."[1] Thus, the question before the court is whether this tooling, in and of itself, is a trade secret for the purposes of the ITSA. Under the ITSA

> [a] "trade secret" is defined as:
>
> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1)     is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

---

[1] Also in Count II, Getz claims that it "has suffered damages as a result of Industrial Tool's conduct conversion [sic] of Getz's tooling *and intellectual property.*" (emphasis added). Though they do not mention "intellectual property" at any other point in Counts II or III, for the reasons set forth below, to the extent Getz is seeking damages for the conversion of its intellectual property — that is, the drawings, specifications, and plans that it gave to Industrial Tool — Count's II and III are clearly preempted by the ITSA.

>    (2)   is the subject of efforts that are reasonable under the circumstances to maintain secrecy or confidentiality.

Though the tooling certainly *contains* information, in that one could presumably use the tooling to uncover the secrets of the Getz-designed cylinder inverter — the court does not believe that the tooling *is* information as required by the ITSA definition of trade secret. Thus, to the extent Getz is seeking damages or injunctive relief because Industrial Tool unlawfully maintains possession of the tooling at issue here, Counts II and III are not preempted by the ITSA. However, to the extent Getz is seeking the return of its "intellectual property," see footnote 1, *supra*, Counts II and III are clearly preempted by the ITSA. Accordingly, Getz will be allowed to pursue its claims for conversion (Count II and replevin (Count III), but only to the extent they are seeking the return of the tooling.

Industrial Tool primarily relies on <u>Fox Controls, Inc. v. Honeywell, Inc.</u>, 2002 WL 1949723 (N.D. Ill.), and <u>Legett & Platt, Inc. v. Hickory Springs Manufacturing Co.</u>, 132 F.Supp.2d 643 (N.D. 2002) in arguing that Counts II and III are based on the appropriation of a trade secret, and therefore preempted by the ITSA. However, in both those cases the courts specifically found that the Plaintiff's common law theft claim was aimed at remedying the theft of an idea. In <u>Fox Controls</u>, it was clear that the plaintiff was concerned only with the theft and misuse of *information*, and the court found that the plaintiff's conversion claim was nothing more than a "simpl[e] restatement[] of plaintiff's claim for misappropriation of trades secrets ...." <u>Fox Controls</u>, 2002 WL 1949723 at *2. In <u>Legett & Platt</u>, the court similarly held that "the plaintiff's attempt to base its claim on the conversion of property does not save it from preemption" because "the allegedly converted property falls within the examples of trade secrets given in the ITSA ...." at 649.

This case is distinguishable from Fox Controls and Legett & Platt in that Getz is not just claiming that Industrial Tool stole their ideas, but further, that they stole their physical property as well. Furthermore, unlike in Legett & Platt, the value of the physical property allegedly taken is not necessarily solely derived from the information contained within the property. The value of the physical property that Getz alleges is rightfully theirs — the tooling — may have significant value beyond any information it contains.

## Conclusion

For the reasons set forth above, Industrial Tool's Motion to Dismiss Counts II, III, V, and VI of Getz's Complaint [#5] is GRANTED in part and DENIED in part. Getz may proceed on Counts II and III, but only to the extent it is seeking relief for the alleged unlawful possession of the physical property at issue.

ENTERED this 26th day of August, 2005.

                                                    s/ Michael M. Mihm
                                                       Michael M. Mihm
                                           United States District Judge